# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF LOUISIANA
### MIDDLE DISTRICT

| | | |
|---|---|---|
| JADA DELAUNE AND GLEN MEYNARDIE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILD, M.M., | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Civil No. 15-cv-478 |
| v. | ) ) | Judge Shelly D. Dick |
| ABBVIE, INC., AND/OR ABBVIE US LLC AND/OR ABBVIE ENDOCRINOLOGY INC., ABBOTT LABORATORIES AND/OR ABBOTT LABORATORIES, INC. AND/OR ABBOTT LABORATORIES INTERNATIONAL LLC AND ABC INSURANCE COMPANY, | ) ) ) ) ) ) ) ) ) | Magistrate Erin Wilder-Doomes |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 2

I.      Plaintiffs Allege that DeLaune Took the FDA-Approved Prescription Drug Humira to Treat Her Ulcerative Colitis, and Experienced Injuries Thereafter ...................... 2

II.     The FDA-Approved Humira and Its Labeling ............................................................... 3

LEGAL STANDARD .......................................................................................................... 4

ARGUMENT ...................................................................................................................... 5

I.      All of Plaintiffs' Product Liability Claims Are Subject to the LPLA. ......................... 5

II.     The LPLA Does Not Recognize Plaintiffs' General Negligence or Failure-to-Test Theories ............................................................................................................................. 6

III.    Plaintiffs Fail to State a Claim Under the LPLA. ....................................................... 7

        A.      Plaintiffs Do Not Plausibly Allege that Humira is Unreasonably Dangerous in Construction or Composition. .............................................................................. 8

        B.      Plaintiffs Do Not Plausibly Allege that Humira Is Unreasonably Dangerous in Design. .............................................................................................................. 10

        C.      Plaintiffs Do Not Plausibly Allege that Humira Is Unreasonably Dangerous for Lack of an Adequate Warning. ...................................................................... 12

IV.     Plaintiffs' Derivative Loss of Consortium Claims Fall Together with the Product Liability Claims. ............................................................................................................. 15

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................ 1, 5

*Aucoin v. Amneal Pharm., LLC*,
  2012 WL 2990697 (E.D. La. July 20, 2012) ....................................... passim

*Cooper v. Pfizer, Inc.*,
  2015 WL 2341888 (S.D. Tex. May 13, 2015) ............................................ 2

*Corley v. Stryker Corp.*,
  2014 WL 783066 (W.D. La. Feb. 25, 2014) ............................................... 7

*Davis v. Teva Pharms. USA, Inc.*,
  2014 WL 4450423 (E.D. La. Sept. 10, 2014) ........................................... 10

*Delery v. Prud. Ins. Co. of Am.*,
  643 So. 2d 807 (La. App. 1994) ............................................................... 14

*Doe v. AstraZeneca Pharms., LP*,
  2015 WL 4661814 (E.D. La. Aug. 5, 2015) .......................................... 7, 14

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ..................................................................... 5

*Ferrell v. Fireman's Fund Ins. Co.*,
  696 So. 2d 569 (La. 1997) ........................................................................ 15

*Fuller v. Wal-Mart Stores, LLC*,
  2013 WL 4094319 (M.D. La. Aug. 13, 2013) ......................................... 15

*Funk v. Stryker Corp.*,
  631 F.3d 777 (5th Cir. 2011) ..................................................................... 2

*Grenier v. Med. Eng'g*,
  243 F.3d 200 (5th Cir. 2001) ................................................................... 10

*Guidry v. Janssen Pharms., Inc.*,
  2016 WL 633673 (E.D. La. Feb. 17, 2016) ......................................... passim

ii

*Hargrove v. Boston Sci. Corp.*,
  2014 WL 4794763 (E.D. La. Sept. 24, 2014) ......................................................... 12

*Holt v. Bayer Healthcare Pharm. Inc.*,
  2014 WL 4799712 (S.D. Ill. Sept. 26, 2014) .......................................................... 7

*Jacobsen v. Wyeth, LLC*,
  2012 WL 3575293 (E.D. La. Aug. 20, 2012) ..................................................... 11, 12

*Jefferson v. Lead Indus. Ass'n, Inc.*,
  106 F.3d 1245 (5th Cir. 1997) ................................................................................ 5

*Kennedy v. Pfizer*,
  2013 WL 4590331 (W.D. La. Aug. 28, 2013) ................................................... 11, 15

*Kennedy v. Pfizer, Inc.*,
  2014 WL 4092918 (W.D. La. Aug. 15, 2014) .......................................... 9, 11, 12

*Lacassin v. Virco*,
  2012 WL 6183682 (W.D. La. Dec. 11, 2012) .......................................................... 7

*Lirette v. DePuy Mitek, L.L.C.*,
  2014 WL 3341358 (W.D. La. July 7, 2014) ........................................................... 12

*Lirette v. DePuy Mitek, L.L.C.*,
  2014 WL 5445777 (W.D. La. Oct. 20, 2014) ......................................................... 10

*McBride v. Medtronic, Inc.*,
  2013 WL 3491085 (W.D. La. July 10, 2013) ........................................................ 15

*McCarthy v. Danek Med., Inc.*,
  65 F. Supp. 2d 410 (E.D. La. 1999) ....................................................................... 12

*Sparks v. Tex. Dep't of Transp.*,
  2015 WL 6692130 (S.D. Tex. Nov. 3, 2015) ........................................................... 2

*Stahl v. Novartis Pharms. Corp.*,
  283 F.3d 254 (5th Cir. 2002) ........................................................................ passim

*Washington v. Wyeth, Inc.*,
  2010 WL 450351 (W.D. La. Feb. 8, 2010) .............................................................. 7

*Watson v. Bayer Healthcare Pharm., Inc.*,
  2013 WL 1558328 (E.D. La. Apr. 11, 2013) .................................................... 10, 14

*Welch v. Technotrim, Inc.*,
   778 So. 2d 728 (La. App. 2001) .................................................................. 8

*Williamston v. Medtronic, Inc.*,
   2014 WL 2042004 (W.D. La. May 15, 2014) ............................................. 2

**Statutes**

21 U.S.C. § 301 *et seq.* ................................................................................. 3

42 U.S.C. § 201 *et seq.* ................................................................................. 3

La. Stat. § 9:2800.52 ................................................................................. 5, 6

La. Stat. § 9:2800.54(B) ................................................................................. 6

La. Stat. § 9:2800.55 ................................................................................. 8, 9

La. Stat. § 9:2800.56 ............................................................................. 10, 11

La. Stat. § 9:2800.57.A ......................................................................... 12, 13

La. Stat. § 9:2800.58 .................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(c) ..................................................................................... 4

**Other Authorities**

71 Fed. Reg. 3934 (Jan. 24, 2006) .......................................................... 3, 4

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants AbbVie, Inc., AbbVie US LLC, and AbbVie Endocrinology, Inc. (together, "AbbVie")[1] file this memorandum in support of their Motion for Judgment on the Pleadings.

## PRELIMINARY STATEMENT[2]

Plaintiffs' three-page, eight-paragraph Complaint is "an unadorned, the-defendant-unlawfully-harmed me accusation" that flunks Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the most, Plaintiffs appear to allege that in June 2014, Jada DeLaune was treated with the prescription drug Humira and then suffered injuries. But the Complaint pleads no *facts* that could give rise to liability by Defendants. Instead, Plaintiffs simply recite the elements of a products liability cause of action, for which they offer no factual support. Rule 8 requires more.

Plaintiffs' claims are subject to the Louisiana Products Liability Act ("LPLA"), which provides the exclusive remedy for Louisiana plaintiffs who claim they were injured by a product. "The [LPLA's] statutory provisions are clear regarding what Plaintiff must allege," and "a failure to allege any facts regarding the elements of these claims must result in dismissal of the claims." *Aucoin v. Amneal Pharm., LLC*, 2012 WL 2990697, at *11 (E.D. La. July 20, 2012). While the sparseness of the Complaint makes it difficult to tell just what theories Plaintiffs may be trying to pursue, what *is* clear is that Plaintiffs have not stated any cognizable LPLA claim.

***First***, the LPLA does not recognize general negligence or failure-to-test theories of liability, so Plaintiffs' purported claims based on those theories fail as a matter of law. ***Second***, Plaintiffs have not pled that Humira was unreasonably dangerous in its construction or

---

[1] Defendants Abbott Laboratories, Abbott Laboratories, Inc., and Abbott Laboratories International LLC are not proper defendants in this lawsuit because (among other things) AbbVie, Inc. and Abbott separated effective January 1, 2013, pursuant to a Separation and Distribution Agreement. Pursuant to that agreement, Abbott transferred to AbbVie, Inc. certain assets, including Humira. Regardless, for reasons detailed below, Plaintiffs fail to state claims against any AbbVie or Abbott Defendant.

[2] Unless otherwise noted, all citations have been omitted and all emphases have been added.

composition, because they allege no facts to support a claim that the Humira DeLaune allegedly took was defectively manufactured.   ***Third***, Plaintiffs have not alleged that Humira was defectively designed, or that an alternative design was available.   ***Fourth***, the Complaint lacks basic facts required to state a claim against a prescription drug manufacturer based on a failure to warn treating physicians of potential risks.   ***Fifth***, Plaintiffs' loss of consortium claims are derivative, and they fall together with the deficient product liability claims.

In short, Plaintiffs have "done no more than formulaically recite statutory provisions and make conclusory allegations, without alleging facts in support of [their] claims." *Aucoin*, 2012 WL 2990697, at *10.   The Court should grant judgment on the pleadings on all claims accordingly.

## BACKGROUND

## I.   Plaintiffs Allege that DeLaune Took the FDA-Approved Prescription Drug Humira to Treat Her Ulcerative Colitis, and Experienced Injuries Thereafter.

Plaintiffs Jada DeLaune and Glen Meynardie brought this action on their own behalf and on behalf of their minor child M.M.   (*See* Compl., Preamble.)  Plaintiffs allege that in September 2013, DeLaune's physician prescribed Humira—a prescription medication manufactured by Defendants—to treat her ulcerative colitis.  (*Id.* ¶ 2.)  Humira has been approved for treatment of moderate to severe ulcerative colitis by the FDA since September 2012.[3]

---

[3] Ex. 1, FDA Sept. 28, 2012 News Release, "FDA approves Humira to treat ulcerative colitis" ("FDA News Release"), *available at* http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm321650.htm.  "As in the context of Rule 12(b)(6), the Court considering a Rule 12(c) motion may consider . . . documents that are subject to judicial notice as public record."  *Sparks v. Tex. Dep't of Transp.*, 2015 WL 6692130, at *1 (S.D. Tex. Nov. 3, 2015).  The Court may take judicial notice of these and other FDA records related to Humira cited below.  *E.g.*, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) ("the district court took appropriate judicial notice of publicly-available documents and transcripts produced by the FDA"); *Williamston v. Medtronic, Inc.*, 2014 WL 2042004, at *6 (W.D. La. May 15, 2014) ("A court may take judicial notice of the FDA's public records without transforming a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment."); *Cooper v. Pfizer, Inc.*, 2015 WL 2341888, at *2 n.1 (S.D. Tex. May 13, 2015) ("tak[ing] judicial notice of the contents of the FDA approved label" of a prescription drug).

The facts regarding DeLaune's alleged injury are thin, to say the least.  Plaintiffs allege that DeLaune was "administered an injection of Humira . . . [o]n or about June 19, 2014." (Compl. ¶ 2.)  DeLaune then allegedly experienced "neuropathy, dysarthria as well as various other maladies."  (*Id.* ¶ 5.)  Beyond asserting that DeLaune suffered injuries at some unspecified time after she was treated with Humira (*see id.*), Plaintiffs plead no facts to establish that Humira proximately caused those injuries.

On these bare allegations alone, Plaintiffs purport to state a claim under the LPLA.  (*Id.* ¶ 3.) Yet several of Plaintiffs' asserted theories of liability do not exist under the LPLA, and the remainder consist of nothing more than legal conclusions based on the statutory language, with none of the required supporting facts.

## II.    The FDA-Approved Humira and Its Labeling.

Humira is an FDA-approved drug available only by prescription.  The FDA first approved Humira in 2002 for the treatment of rheumatoid arthritis.  (Ex. 1, FDA News Release at 1.)  By the time DeLaune was prescribed Humira in September 2013, the FDA had approved Humira for seven indications:   rheumatoid arthritis, juvenile idiopathic arthritis, psoriatic arthritis, ankylosing spondylitis, Crohn's disease, ulcerative colitis (the disease for which DeLaune alleges she was prescribed Humira), and plaque psoriasis.  (Ex. 2, Humira Sept. 19, 2013 label at 1.[4])

Both Humira and its label were subjected to stringent FDA review at all times and were found both safe and effective.  The FDA is the "expert Federal public health agency charged by Congress with ensuring that drugs are safe and effective" pursuant to the Federal Food, Drug, and Cosmetics Act (FDCA), 21 U.S.C. § 301 *et seq.*, and the Public Health Services Act, 42 U.S.C. § 201 *et seq.*, 71 Fed. Reg. 3922, 3934 (Jan. 24, 2006).  The FDCA and its implementing

---

[4] *Available at* http://www.accessdata.fda.gov/drugsatfda_docs/label/2013/125057s327lbl.pdf.

regulations direct the FDA to "make[] approval decisions based not on an abstract estimation of [a drug's] safety and effectiveness, but rather on a comprehensive scientific evaluation of the product's risks and benefits."  *Id.*  As part of this scientific evaluation, the FDA undertakes a rigorous safety review that includes "a comprehensive evaluation of risk information adequate to support a factual and sufficient summary of the risk information in labeling."[5]  "The centerpiece of risk management for prescription drugs generally is the labeling which reflects thorough FDA review of the pertinent scientific evidence and communicates to health care practitioners the agency's formal, authoritative conclusions regarding the conditions under which the product can be used safely and effectively."  71 Fed. Reg. at 3934.

After this careful, statutorily-mandated scientific review, the FDA approved Humira for the treatment of ulcerative colitis in September 2012.  (Ex. 1, FDA News Release at 1.) Ulcerative colitis is a chronic disease that causes inflammation and ulcers in the lining of the large intestine, and it affects about 620,000 Americans.  (*Id.*)  In approving this indication, the FDA noted that "Humira's safety and effectiveness for ulcerative colitis were established in two clinical studies," and that "[n]o new side effects were identified during [those] clinical studies." (*Id.*)  In approving Humira for treatment of ulcerative colitis, the FDA also approved a revised warnings label for Humira.  (Ex. 2, Humira Sept. 19, 2013 label.)  The label in effect in September 2013 reflected the FDA's measured, thorough analysis of the risks and benefits of Humira based on the scientific data available at the time.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings

---

[5] Ex. 3, FDA, *Reviewer Guidance: Conducting a Clinical Safety Review of a New Product Application and Preparing a Report on the Review* (Feb. 2005) at 4, *available at* http://www.fda.gov/downloads/Drugs/ GuidanceComplianceRegulatoryInformation/Guidances/ucm072974.pdf.

under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state[] a plausible claim for relief."  *Ashcroft*, 556 U.S. at 679.  A claim is "plausible" only if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678.  In evaluating the complaint's "factual content," the court should look at well-pleaded factual allegations, but should not accept "a legal conclusion couched as a factual allegation" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id*.  If the allegations show only "the mere possibility of misconduct," there is no plausible claim for relief and the complaint must be dismissed.  *Id*. at 679.

## ARGUMENT

Because the Complaint fails to state any claim, Defendants' motion for judgment on the pleadings should be granted in its entirety.

**I.      All of Plaintiffs' Product Liability Claims Are Subject to the LPLA.[6]**

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products."  La. Stat. § 9:2800.52.  To state a claim under the LPLA, a plaintiff must allege:  "1. that the defendant is a manufacturer of the product; 2. that the claimant's damage was proximately caused by a characteristic of the product; 3. that the characteristic made the product unreasonably dangerous *in one of the four ways provided in the statute*; and 4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else."  *See Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997).  A product is "unreasonably dangerous" under the LPLA "if *and only if*" it is unreasonably

---

[6] Plaintiffs' only non-product liability claim, a claim for loss of consortium (*see* Compl. ¶¶ 6-7), fails for reasons addressed in Sec.IV *infra*.

dangerous in one of the following four ways:  (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because it does not conform to an express warranty. La. Stat. § 9:2800.54(B).

Plaintiffs allege that Defendants manufactured Humira, and they seek to hold Defendants liable for injuries they claim resulted from DeLaune's Humira use.  (Compl. ¶¶ 2-3, 5.)  Their claims thus fall squarely within the "exclusive" scope of the LPLA.  *See* La. Stat. § 9:2800.52; *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260-61 (5th Cir. 2002) (applying LPLA to claims against drug manufacturer by plaintiff who allegedly developed hepatitis after taking the drug). They have failed, however, to allege a cause of action under that statute.

## II.    The LPLA Does Not Recognize Plaintiffs' General Negligence or Failure-to-Test Theories.

The LPLA is clear that "[a] claimant ***may not*** recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in [the LPLA]."  La. Stat. § 9:2800.52; *Stahl*, 283 F.3d at 261-62 (holding that the LPLA "limits a plaintiff's theories of recovery against a manufacturer of an allegedly defective product to those established by the LPLA," and affirming dismissal of a tort claim as outside the LPLA).  And while the LPLA's "statutory mechanisms for establishing that a product is unreasonably dangerous are predicated on principles of strict liability, negligence, or warranty," those causes of action "are not available as theories of recovery against a manufacturer, independent from the LPLA."  *Stahl*, 283 F.3d at 261.  Plaintiffs nonetheless appear to try and plead liability theories not within the scope of liability contemplated by the LPLA by broadly alleging that Defendants failed "to maintain the standard of care," and by alleging a general "[f]ailure to properly . . . test Humira."  (Compl. ¶¶ 3(e) & 3(a).)

Both claims should be dismissed with prejudice.  First, to the extent that the alleged failure "to maintain the standard of care" is an attempt to assert some theory of negligence, the LPLA does not recognize a freestanding negligence claim.  *Stahl*, 283 F.3d at 261 (negligence is "not available as [a] theor[y] of recovery against a manufacturer"); *Aucoin*, 2012 WL 2990697, at *5 ("the law is clear that Plaintiff may not recover against [a manufacturer] Defendant under theories of negligence or strict liability").  Second, "failure to test *per se* does not give rise to a cause of action except insofar as it renders the product unreasonably dangerous" under the LPLA.  *Lacassin v. Virco*, 2012 WL 6183682, at *6 (W.D. La. Dec. 11, 2012).  That is, an alleged failure to test is actionable only if it makes the product unreasonably dangerous in one of four ways recognized by the LPLA.  Accordingly, Plaintiffs' non-LPLA "standard of care" and failure to test claims fail as a matter of law.  *See, e.g.*, *Aucoin*, 2012 WL 2990697, at *5 (dismissing negligence claim); *Corley v. Stryker Corp.*, 2014 WL 783066, at *1-2 (W.D. La. Feb. 25, 2014) (dismissing various non-LPLA claims, including claims for "negligence" and for "failure to adequately test," and holding that they can be re-pled "only if they can be restated in accordance with the LPLA.").[7]

## III.    Plaintiffs Fail to State a Claim Under the LPLA.

The Complaint's barebones allegations make it difficult to decipher which (if any) of the four definitions of an "unreasonably dangerous" product recognized by the LPLA Plaintiffs may

---

[7] *Accord, e.g.*, *Washington v. Wyeth, Inc.*, 2010 WL 450351, at *2 (W.D. La. Feb. 8, 2010) (dismissing claims for "negligence, misrepresentation and fraud, and failure to warn" because they are "not viable as independent theories of recovery outside of the LPLA framework.); *Doe v. AstraZeneca Pharms., LP*, 2015 WL 4661814, at *3 (E.D. La. Aug. 5, 2015) (holding that "to the extent that Plaintiff's complaint contains non-LPLA claims, these are preempted by the LPLA" and dismissing accordingly); *Holt v. Bayer Healthcare Pharm. Inc.*, 2014 WL 4799712, at *3 (S.D. Ill. Sept. 26, 2014) (applying Louisiana law and dismissing claims that were "not expressly assert[ed]" . . . under the LPLA" and were instead "based on general theories of liability," because "freestanding theories of recovery are not available for a cause of action against a manufacturer sounding in product liability.").

try to pursue in this case.  It does not matter, though, as Plaintiffs have failed to state a claim under any theory.[8]

###### A.      Plaintiffs Do Not Plausibly Allege that Humira is Unreasonably Dangerous in Construction or Composition.

The first of four ways to plead that a product is unreasonably dangerous is to show that it is "unreasonably dangerous in construction or composition."  La. Stat. § 9:2800.55.  Plaintiffs may be trying to bring such a claim here by asserting that Defendants failed to "manufacture [Humira] in accordance with the FDA pre-market approval specifications."  (Compl. ¶ 3(d).) But this one-sentence assertion is unsupported by facts, and it falls far short of stating a claim.

To properly make out this claim, Plaintiffs must plead facts showing that "at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer."  *See* La. Stat. § 9:2800.55.  That is, Plaintiffs must show that the particular dose of Humira that DeLaune took and that allegedly caused her injuries was "defective due to a mistake in the manufacturing process."  *See Stahl*, 283 F.3d at 263; *Welch v. Technotrim, Inc.*, 778 So. 2d 728, 733 (La. App. 2001) ("a claimant must demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product *in question* materially deviated from those standards so as to render it 'unreasonably dangerous.'") (emphasis in original).  So, "[t]o survive a motion to

---

[8] The first three definitions of an "unreasonably dangerous" product under the LPLA are addressed in Secs. III.A-III.C *infra*.  The fourth and final way for a plaintiff to plead that a product is "unreasonably dangerous" is by alleging that "it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue."  La. Stat. § 9:2800.58.  Plaintiffs make no attempt to bring an express warranty claim.  (*See* Compl. ¶ 3.)  Even if they had, such a claim would also fail on the pleadings for lack of any facts to support it because at bare minimum, this requires Plaintiffs to allege (among other things) "the content of the warranty" and to "explain how the warranty was untrue."  *Robertson v. AstraZeneca Pharms., LP*, 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015) (prescription drug case).  The Complaint has no such allegations.

dismiss, the claimant must demonstrate that the particular product either deviated from the defendant's own performance standards or specifications or from identical products manufactured by the defendant." *Robertson*, 2015 WL 5823326, at \*3 (prescription drug case).

There are no such allegations here. Plaintiffs assert that Defendants failed to "manufacture [Humira] in accordance with the FDA pre-market approval specifications." (Compl. ¶ 3(d).) This is nothing more than a conclusory statement that Humira somehow "deviated from the manufacturer's specifications." *See* La. Stat. § 9:2800.55. What are missing are any ***facts*** to support this legal conclusion. Indeed, Plaintiffs do not even allege that the Humira DeLaune took actually deviated from any relevant specifications—which alone warrants dismissal. *See* Compl. ¶ 2 (alleging that DeLaune "was administered an injection of Humira" without alleging that the particular dose of Humira was somehow defective); *Robertson*, 2015 WL 5823326, at \*3 (dismissing where plaintiff "failed to allege a defect in the particular products [Seroquel, a prescription drug] she used"); *Guidry v. Janssen Pharms., Inc.*, 2016 WL 633673, at \*4 (E.D. La. Feb. 17, 2016) (dismissing where "[n]one of the specific facts alleged by the plaintiff suggest that the Invokana medication she ingested deviated from the specifications or intended design of the drug.").

Even had Plaintiffs alleged that the Humira that DeLaune used was somehow defective (which they have not), there are also no facts to suggest ***how*** that Humira deviated from any manufacturing specifications, or to suggest there was any mistake in Defendants' manufacturing process. Absent such allegations, the claim fails on the pleadings. *See Kennedy v. Pfizer, Inc.*, 2014 WL 4092918, at \*3 (W.D. La. Aug. 15, 2014) (dismissing because the complaint was "silent as to any . . . factual allegations regarding [prescription drug] Seroquel's alleged construction or composition defects."); *Guidry*, 2016 WL 633673, at \*4 (dismissing where

9

plaintiff failed to "allege facts as to how the composition of [prescription drug] Invokana was defective."); *Aucoin*, 2012 WL 2990697, at *10 (dismissing where plaintiff "has not alleged that the [prescription drug] he received deviated in any way from the manufacturer's production standards or from the manufacturer's otherwise identical products").[9]

In short, Plaintiffs here have done no more than "merely recite[] the elements" of a cause of action—if that—and this claim fails accordingly.  *See Aucoin*, 2012 WL 2990697, at *10 (granting dismissal in same circumstances).

### B.    Plaintiffs Do Not Plausibly Allege that Humira Is Unreasonably Dangerous in Design.

The second way to plead that a product is unreasonably dangerous under the LPLA is to allege facts supporting a design defect claim.  *See* La. Stat. § 9:2800.56.  Plaintiffs may be trying to bring such a claim here by asserting that Defendants failed "to properly design . . . Humira." (Compl. ¶ 3(a).)  If so, this barebones assertion likewise fails on the pleadings.

First, the Complaint fails to allege adequately that Humira was defectively designed.  The assertion in Paragraph 3(a) that Humira was not "properly design[ed]" merely parrots the statutory language, and there are no facts to support this legal conclusion.  "Louisiana law does not allow a fact finder to presume an unreasonably dangerous design solely from the fact that injury occurred."  *Grenier v. Med. Eng'g*, 243 F.3d 200, 205 (5th Cir. 2001).  Thus, it is plainly not enough for a plaintiff to say that he or she experienced injuries at some point after taking the drug at issue based on a conclusory allegation of inadequate design.  *See, e.g.*, *Guidry*, 2016 WL

---

[9] *See also Watson v. Bayer Healthcare Pharm., Inc.*, 2013 WL 1558328, at *4 (E.D. La. Apr. 11, 2013) (explaining in a case involving Mirena, an intrauterine birth control device, that "[a]bsent factual allegations addressing how the Mirena deviated from Bayer's normal production standards, the plaintiff fails to meet the plausibility standard."); *Lirette v. DePuy Mitek, L.L.C.*, 2014 WL 5445777, at *3-4 (W.D. La. Oct. 20, 2014) ("[a]bsent factual allegations addressing *how* the product deviated from the defendant's normal production standards, a plaintiff fails to meet the plausibility standard.") (emphasis in original); *Davis v. Teva Pharms. USA, Inc.*, 2014 WL 4450423, at *4 (E.D. La. Sept. 10, 2014) (finding LPLA claim "not sufficiently pl[e]d" where "Plaintiff has not alleged how the [drug at issue] deviated from either the manufacturer's specifications or its otherwise identical products.").

633673, at *1, *4 (dismissing despite plaintiff's allegations that "as a result of consuming [prescription drug] Invokana . . . she has suffered permanent injury from ketoacidosis, acute kidney injury, and/or acute renal failure" because "the mere fact that she was hospitalized sometime after using Invokana does not suffice," and plaintiff "fail[e]d to plead or support *how* Invokana's design is defective . . . or *how* the alleged defect caused her particular injuries."); *Kennedy v. Pfizer*, 2013 WL 4590331, at *4 (W.D. La. Aug. 28, 2013) (dismissing where plaintiff "fail[ed] to allege *how* the design [of the drug] is defective or what aspect of the design caused the injury."); *Robertson*, 2015 WL 5823326, at *4 (dismissing because "the complaint does not allege how the [prescription drug's] design is defective or how the design relates to [plaintiff's] injuries.").  With no facts to show any actual design defect in Humira or how that purported defect caused the injuries DeLaune claims she suffered, this claim is a non-starter.

Second, the design defect claim also fails for another independent reason:  Plaintiffs must also allege that "at the time [Humira] left its manufacturer's control . . . [t]here existed an alternative design for [Humira] that was capable of preventing [DeLaune's] damage."  *See* La. Stat. § 9:2800.56; *Jacobsen v. Wyeth, LLC*, 2012 WL 3575293, at *6 (E.D. La. Aug. 20, 2012). But Plaintiffs have not even tried to plead that an alternative design existed for Humira, let alone that it would have prevented DeLaune's alleged injuries.

This omission is also fatal to the design defect claim.  "Failure to plead that an alternative design was available . . . is enough to doom the complaint, as the existence of an alternative design is a necessary element to a design defect claim."  *Kennedy*, 2014 WL 4092918, at *4. And courts do not hesitate to dismiss design defect claims against drug manufacturers for failure to plausibly allege an alternative design for the drug.  *See, e.g.*, *Guidry*, 2016 WL 633673, at *4 (prescription drug case) (dismissing because plaintiff failed to allege "in what way Invokana

could have remedied the defect"); *Kennedy*, 2014 WL 4092918, at *4 (prescription drug case) (dismissing because "the complaint [was] silent as to whether there is any alternative design for Seroquel that was capable of preventing Plaintiff Kennedy's damage."); *Jacobsen*, 2012 WL 3575293, at *10 (prescription drug case) (dismissing for failure to plead the "'essential element' that there existed an available alternative design."); *Aucoin*, 2012 WL 2990697, at *10 (prescription drug case) (dismissing because "Plaintiff has not alleged that there existed an alternative design for the drug, an 'essential element' of a LPLA design defect claim.").[10]  The Court should follow this well-settled application of the LPLA, and find that the design defect claim fails on the pleadings.

### C. Plaintiffs Do Not Plausibly Allege that Humira Is Unreasonably Dangerous for Lack of an Adequate Warning.

The third way for a plaintiff to plead that a product is unreasonably dangerous is by alleging that "an adequate warning about the product has not been provided."  La. Stat. § 9:2800.57.A.  Plaintiffs assert that Defendants failed "to warn patients / purchasers of the dangerous conditions in Humira" (Compl. ¶ 3(c)), but this conclusory allegation fails as a matter of law.  "Louisiana applies the 'learned intermediary doctrine' to products liability claims involving prescription drugs," under which "a drug manufacturer discharges its duty to consumers by reasonably informing ***prescribing physicians*** of the dangers of harm from a drug." *Stahl*, 283 F.3d at 265; *e.g.*, *McCarthy v. Danek Med., Inc.*, 65 F. Supp. 2d 410, 413 (E.D. La. 1999) ("Under Louisiana law generally, a manufacturer of medical drugs . . . has no duty to warn

---

[10] *See also Robertson*, 2015 WL 5823326, at *4 (prescription drug case) (dismissing where "Plaintiff failed to demonstrate the existence of a specific alternative design."); *Lirette v. DePuy Mitek, L.L.C.*, 2014 WL 3341358, at *5 (W.D. La. July 7, 2014) (medical device case) (dismissing because "plaintiffs do not allege the existence of an alternative design to which the defendants could have adhered."); *Hargrove v. Boston Sci. Corp.*, 2014 WL 4794763, at *9-10 (E.D. La. Sept. 24, 2014) (medical device case) (dismissing because plaintiffs "have not met the initial condition established under this category of the LPLA—namely to allege that an alternative design for the guidewire existed, and that this alternative design was capable of preventing the guidewire from breaking off during procedures.").

the consumer directly of any risks or contraindications associated with its product."). Because Defendants have no duty to warn consumers like Plaintiffs of any potential risks of Humira, judgment on the pleadings on this claim is proper to the extent that the failure to warn theory is premised on a duty to warn "patients/purchasers."

Plaintiffs fare no better by asserting that Defendants failed "to adequately warn Health Care Providers of the dangers of Humira." (Compl. ¶ 3(b).) In the prescription drug context, the Fifth Circuit has held that "[t]o successfully maintain a failure-to-warn claim under the LPLA, a plaintiff must demonstrate [1] that the product in question has a potentially damage-causing characteristic and [2] that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl*, 283 F.3d at 264 (citing La. Stat. § 9:2800.57(A)). Under the "two-prong test governing inadequate warning claims under the LPLA when the learned intermediary doctrine is applicable, . . . [f]irst, the plaintiff must show that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician," and "[s]econd, the plaintiff must show that this failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury." *Stahl*, 283 F.3d at 265-66. The Complaint does not meet any of these requirements.

First, there are no allegations to suggest that Humira has any "potentially damage-causing characteristics" that would be relevant to Plaintiffs' alleged injuries. That is, while Plaintiffs allege that DeLaune experienced "neuropathy, dysarthria as well as various other maladies" (Compl. ¶ 5), they do not allege that Humira in fact causes any of those alleged injuries. Without such allegations, the failure-to-warn claim fails on the pleadings. *See Guidry*, 2016 WL 633673, at *4 (dismissing because although plaintiff "repeatedly allege[d] that [prescription drug] Invokana has a potentially damage-causing characteristic; namely, that Invokana causes acute

13

kidney injury, acute renal failure, and ketoacidosis . . . [t]hese assertions . . . are mere conclusions"); *Doe v. AstraZeneca Pharms., LP*, 2015 WL 4661814, at \*4 (E.D. La. Aug. 5, 2015) (dismissing where the complaint failed to allege "any specific adverse effect [of the drug] of which AstraZeneca failed to warn, or assert a proper warning which she contends would have been appropriate.").

Next, there are also no facts to support Plaintiffs' bare assertion that Defendants failed "to adequately warn Health Care Providers of the dangers of Humira." (Compl. ¶ 3(b).)  This necessarily means that Plaintiffs have not met their burden to plead that Defendants failed to warn DeLaune's "physician of a risk associated with the product that was not otherwise known to the physician." *See Stahl*, 283 F.3d at 265-66.  Indeed, the Complaint does not even allege "any specific adverse effect of which [Defendants] failed to warn," *see AstraZeneca*, 2015 WL 4661814, at \*4, and instead speaks only in vague terms of some unspecified "dangers of Humira." (Compl. ¶ 3(b).)  The absence of such facts is fatal because "[a]n essential element of a . . . failure to warn [claim] . . . is that there be some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered." *Delery v. Prud. Ins. Co. of Am.*, 643 So. 2d 807, 814 (La. App. 1994); *see also Stahl*, 283 F.3d at 266 (requiring plaintiff to "show that [the] failure to warn the physician was both a cause in fact and the proximate cause of the plaintiff's injury.").  Put another way, the failure-to-warn claim cannot stand unless Plaintiffs can link some specific alleged inadequacy in Humira's warnings to DeLaune's alleged injuries.  *See Guidry*, 2016 WL 633673, at \*4 (dismissing where plaintiff claimed that drug manufacturer failed to warn of risk of ketoacidosis, but "the plaintiff [did] not allege . . . that she ever suffered from ketoacidosis.").[11]

---

[11] *See also Watson v. Bayer Healthcare Pharm., Inc.*, 2013 WL 1558328, at \*5 (E.D. La. Apr. 11, 2013) (dismissing where plaintiff "fail[ed] to allege facts suggesting how Bayer's allegedly inadequate warning [about an intrauterine

Here, though, Plaintiffs have not even identified any inadequacy in Humira's warnings. Having failed even to plead a warning defect, much less that a different warning would have changed her physician's decision to prescribe Humira, there is no way for Plaintiffs to show that Defendants' supposed failure to warn DeLaune's physician "was both a cause in fact and the proximate cause of [DeLaune's] injury." *See Stahl*, 283 F.3d at 266.

## IV. Plaintiffs' Derivative Loss of Consortium Claims Fall Together with the Product Liability Claims.

Plaintiffs Glen Meynardie (DeLaune's husband) and M.M. (DeLaune's minor child) bring claims for loss of consortium as a result of DeLaune's alleged injuries. (Compl. ¶¶ 6-7.) These claims are derivative—that is, Meynardie and M.M. cannot maintain them unless DeLaune herself has viable claims to begin with. *See, e.g.*, *Ferrell v. Fireman's Fund Ins. Co.*, 696 So. 2d 569, 576 (La. 1997) ("hold[ing] as a matter of law that loss of consortium claims are derivative of the primary victim's injuries."). As detailed above, though, all of DeLaune's claims fail on the pleadings. As a result, Meynardie's and M.M.'s loss of consortium claims fail as well. *See, e.g.*, *McBride v. Medtronic, Inc.*, 2013 WL 3491085, at *5 (W.D. La. July 10, 2013) (holding, after dismissing product liability claims, that "[t]here being no original Louisiana law claims remaining against Medtronic, there can be no derivative loss of consortium claim"); *Fuller v. Wal-Mart Stores, LLC*, 2013 WL 4094319, at *7 (M.D. La. Aug. 13, 2013) ("because his [consortium] claim is derivative of his wife's, the Court's dismissal of Mrs. Fuller's negligence claim renders moot Mr. Fuller's claim for loss of consortium.").

---

birth control system] caused her specific injury," because "failure to allege facts showing a causal connection between her injury and [the product's] warning renders her inadequate warning claim implausible."); *Kennedy*, 2013 WL 4590331, at *4-5 (following *Watson* and dismissing failure-to-warn claim involving a prescription drug where "Plaintiffs fail[ed] to articulate a causal connection between the claimed inadequate warning and Kennedy's resulting damage.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Defendants' motion for judgment on the pleadings on all claims.


Date:   February 29, 2016                    Respectfully submitted,


BIENVENU, BONNECAZE, FOCO, VIATOR & HOLINGA, APLLC

By: *s/David Bienvenu*

David M. Bienvenu, Jr., #20700
John Allain Viator, #25915
Lexi T. Holinga, #30096
Tam Catherine Bourgeois, #30405
4210 Bluebonnet Blvd.
Baton Rouge, LA 70809
Phone:  (225) 388-5600
Fax:  (225) 388-5622

Michael P. Foradas, P.C. (*pro hac vice*)
Renee D. Smith (*pro hac vice*)
Anne Raven (*pro hac vice*)
KIRKLAND & ELLIS LLP
300 N. LaSalle
Chicago, IL 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
michael.foradas@kirkland.com
renee.smith@kirkland.com
anne.raven@kirkland.com

*Co-counsel for Defendants AbbVie, Inc., AbbVie US LLC, and AbbVie Endocrinology, Inc., Abbott Laboratories, Abbott Laboratories, Inc., and Abbott Laboratories International LLC*

16

## CERTIFICATE OF SERVICE

I certify that on February 29, 2016, a copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to all CM/ECF participants by operation of the Court's electronic filing system and to plaintiffs' counsel by email.

By: *s/David Bienvenu*